UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETER B. ROLLINS,<br><br>         Plaintiff,<br>   v.<br><br>RAYMOND E. MAYBUS, SECRETARY OF THE NAVY,<br><br>         Defendant. | Case No.: C 12-2047 PSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 26)** |

Defendant Raymond E. Maybus, Secretary of the Navy ("the Secretary") moves for summary judgment pursuant to Fed. R. Civ. P. 56(a) on the employment discrimination claims brought by Plaintiff Peter Rollins ("Rollins").[1] Rollins opposes the motion.[2] Having considered the parties' papers and oral arguments, the court GRANTS the Secretary's motion.

## I.   BACKGROUND

Rollins claims that during his employment at the Department of the Navy, Command Naval Region Southwest Naval Support Activity Monterey ("NSA Monterey"), his supervisors Shayne E. Gardner ("Gardner") and Kenneth Bench ("Bench") through various disciplinary actions discriminated against him because of his race. The Secretary maintains that Rollins was subject to the discipline because of his failure to comply with the Navy's rules and policies. The facts

---

[1] *See* Docket No. 26.

[2] *See* Docket No. 33.

1

Case No.: 12-2047 PSG
ORDER

regarding Rollins' conduct and Gardner's and Bench's actions are largely undisputed. The only issue is whether the degree of the discipline taken against Rollins reflects racial discrimination by Gardner and Bench and to what degree other evidence supports Rollins' theory. The court begins by recounting the facts as supported by admissible evidence presented by Rollins and the Secretary, with all inferences being drawn in Rollins' favor.

**A.    Rollins' Employment at NSA Monterey**

Rollins' relationship with Gardner began before his employment at NSA Monterey. Rollins worked from 2004 to 2009 as a civilian police offer under Gardner's supervision at the Marine Corps Base in Barstow, CA.[3] In February 2009, after Gardener had been selected as the new Deputy Police Chief, he recruited Rollins to serve as a Lieutenant Supervisory Police Officer at NSA Monterey.[4] Rollins accepted the offer and began in April. As a Supervisory Police Officer, Rollins was subject to a one-year probationary period during which his performance would be evaluated.[5] His responsibilities included overseeing the day-to-day functions of eighteen junior officers, acknowledging leave requests from shift employees, and utilizing the timekeeping system to review and certify employee attendance.[6]

The relationship between Gardner and Rollins extended outside of their work relationship. Shortly after beginning at NSA Monterey, Rollins rented a room to his supervisor Gardner for $300 a month,[7] in part because the two men were, according to Rollins, "friends at the time" who "hung out after work" and "went drinking together."[8] After Gardner failed to pay rent for several months,

---

[3] *See* Docket No. 26 Ex. B at 4; Ex. J at 5

[4] *See id.* Ex. X at 10.

[5] *See id.* Ex. L at 1.

[6] *See id.*

[7] *See id.* Ex J at 5.

[8] *See id.* Ex. AG at 86:12-20.

Case No.: 12-2047 PSG
ORDER

2

however, Rollins asked him to leave.[9]  Gardner nevertheless continued to occupy the room for six more months, apparently against Rollins' wishes.[10]

**B.      Disciplinary Actions**

    **1.      December 2009 Proposed Suspension**

On October 27, 2009 and November 5, 2009 Rollins failed to report to mandatory 8:00 AM all-staff meetings.[11] He conceded that he was absent but expressed his belief that the meetings were optional.[12] During this time, Rollins also apparently was observed sleeping on duty on more than one occasion, including on October 6, 2009, and was found to have engaged in conduct unbecoming a supervisor for raising his voice to correct a police officer in view of staff and visitors.[13]

On November 10, 2009, Gardner filed a Notice of Proposed Suspension, recommending a two-day suspension from duty and pay.[14] This proposed suspension fell within the range deemed permissible by the Schedule in the Department of the Navy Civilian Human Resources Manual ("the Schedule") used by the Navy to determine penalties for misconduct.[15] The Schedule provides

---

[9] *See id.* Ex. J at 5.

[10] *See id.* Ex. AG at 87:3-6.  Rollins also claims that in May 2009, Gardner called him into his office and told him that his supervisor Police Chief Phil Cady ("Cady") had questioned why Gardner had hired Rollins, stating "We choose our own" and that "our own" refers to Caucasian officers.  *See* Docket No. 33.  The Secretary disputes Rollins' characterization of Cady's statement. *See* Docket No. 34.  The court notes that neither Rollins nor the Secretary provided the excerpts from Gardner's deposition upon which each relies in support of their position.  The court therefore has insufficient evidence from which to determine whether a factual dispute exists regarding Cady's statement or whether it reflects racial animus.

[11] *See* Docket No. 26 Ex. J at 1.

[12] *See id.* at 4.

[13] *See id.* at 1.

[14] *See id.* at 1.

[15] *See id.* Ex. T.

3

Case No.: 12-2047 PSG
ORDER

that the penalty for a first offense of "unexcused or unauthorized absence on one or more scheduled days of work or assigned overtime" ranges from reprimand to removal.[16]

After being notified of the proposed suspension, Rollins sent a letter on December 9, 2009 to NSA Monterey Human Resources specialist Karen Ross ("Ross"), complaining of a racially hostile work environment.[17] This letter was received by Dora Clark ("Clark"), Ross's successor, who later stated that the situation should have been referred to Equal Employment Opportunity ("EEO") specialist Deborah Baity.[18]

On January 11, 2010, Rollins' second-level supervisor Bench agreed that a two-day suspension was the appropriate sanction.[19] Rollins stated that on February 11, 2010 he filed an EEO grievance regarding the suspension.[20] He also apparently filed a grievance with the Navy on February 1, 2010, requesting an investigation regarding a hostile work environment.[21] On March 9, 2010, Bench denied Rollins' February 1 request as to both his suspension and his reassignment.[22] Rollins served the two-day suspension on August 3 and 4, 2010[23] and later admitted to failing to report to the two meetings, sleeping while on duty, and engaging in conduct unbecoming a supervisor.[24] Rollins testified that this two-day suspension was the only suspension he actually served.[25]

---

[16] Ex. T at 30.

[17] *See* Docket No. 41 Ex. 6.

[18] *See id.* Ex. 5 at 36:5-7, 37:12-18.

[19] *See* Docket No. 26 Ex. K.

[20] *See id.* Ex. V at 6 (describing his earlier race-based discrimination claim). Neither of the parties provided a copy of the complaint Rollins filed or any other evidence regarding the EEO contact.

[21] *See id.* Ex. M (describing the February 1, 2010 grievance).

[22] *See id.* Ex. M.

[23] *See id.* Ex. N.

4
Case No.: 12-2047 PSG
ORDER

### 2. February 2010 Demotion

On February 9, 2010, Bench notified Rollins of his failure to satisfactorily complete the supervisory probationary period.[26] Among other duties not performed, Bench noted that Rollins had failed to: (1) "acknowledge leave requests from [his] shift employees"; (2) "utilize . . . the timekeeping system to review and certify attendance entries for [his] shift employees"; (3) "ensure [his] employees were issued their equipment at the beginning of their shift"; and (4) "assist with coordination and preparation for personnel training."[27] Bench reassigned Rollins to a non-supervisory position and placed him under Lt. Jeffery Pray's ("Pray") supervision.[28]

Rollins contends that in violation of the Navy's policy he was never informed before his reassignment that he was performing poorly. Rollins also contends that Caucasian officers such as Pray received constant feedback about their performance while he did not.

### 3. July 2010 AWOL Charge

On July 15, 2010, Rollins did not show for his shift and failed to secure Pray's approval for the absence.[29] Although he admits that he was aware of the proper request for leave procedures and had successfully followed them fifteen times, Rollins asserted that he verbally requested leave from his supervisor, and thought that getting approval was unnecessary given that he had notified Pray

---

[24] *See id.* Ex. R.

[25] *See id.* Ex. AG at 69:1-12.

[26] *See id.* Ex. L.

[27] *Id.* at 1.

[28] *See id.*; Ex. W at 1-2.

[29] *See id.* Ex. V at 8.

Case No.: 12-2047 PSG
ORDER

5

of his intent to be absent.[30] Rollins nevertheless admits he knew that he should have obtained approval and that he "dropped the ball" by failing to do so.[31]

On the day Rollins was absent, Pray called Rollins to give him notice that because there was no record of his leave request form he was Absent Without Leave ("AWOL").[32] Pray testified that when he ordered Rollins to return to work, Rollins became angry, used expletives,[33] and refused the order because he "already had other obligations."[34] Pray stated that he has never seen another employee "commit similar misconduct" and had on only one occasion supervised another employee who knew he was AWOL and continued to remain AWOL.[35] Rollins admitted in his deposition testimony that he had refused to return, but he recounts that Pray was the person who got angry and hung up on Rollins.[36]

As a result of this incident, Rollins' supervisors consulted with Human Resources and recommended a suspension in accordance with the guidelines provided in the Schedule.[37] For a second offense of "unexcused or unauthorized absence on one or more scheduled days of work," the recommended remedies range from a "[five]-day suspension to removal."[38] Given Rollins' earlier suspension resulting from Gardner's December 2009 proposed suspension, Gardner and Bench apparently believed the AWOL issue was Rollins' second offense. Before proposing the

---

[30] *See id.*

[31] *See id.*

[32] *See id.* Ex. W at 6; Ex. X at 5.

[33] *See* Docket No. 35 Ex. D at 78:1-79:6.

[34] *See* Docket No. 26 Ex. V at 9.

[35] *See id.* Ex. W at 10; Ex. AH at 3

[36] *See id.* Ex. AG at 66:12 – 67:17.

[37] *See id.* Ex. T; Ex. W at 6; Ex. X at 9

[38] *See id.* Ex. P; Ex. T at 30.

6
Case No.: 12-2047 PSG
ORDER

suspension, Gardner consulted with Clark, the Human Resources Specialist, who apparently indicated that a fourteen-day suspension was appropriate.[39]

On July 22, 2010, Gardner proposed the fourteen-day suspension.[40] Following a meeting with the union representing Rollins, on September 1, 2010, Bench reduced the duration of the suspension to seven days and offered to hold the seven-day suspension in abeyance if Rollins accepted the terms of a proposed Alternative Discipline Agreement ("ADA").[41] According to Pray, the terms of the ADA were designed to be severe enough for Rollins to understand that his misconduct was unacceptable, without being financially punitive.[42] The ADA also included a description of Rollins' misconduct as "I was absent without approved leave on two occasions and I failed to follow proper leave requesting procedures on two occasions."[43] Rollins also testified that he was not in fact charged with being AWOL because of the ADA.[44] Although he testified that he voluntarily signed the ADA, Rollins asserted that he was unhappy with having to admit wrongdoing.[45]

### C. EEO Complaints

As the court described above, Rollins represented that he initiated EEO contact in February 2010 regarding Gardner's December 2009 suspension and that he filed a grievance with the Navy regarding racial discrimination. And as noted, Bench denied the grievance filed with the Navy. As

---

[39] *See id.* Ex. X at 5.

[40] *See id.* Ex. P.

[41] *See id.* Ex. Q; Ex. X.

[42] *See id.* Ex. W at 9.

[43] *See id.* Ex. R.

[44] *See id.* Ex. AG at 68:13-20,

[45] *See id.* at 77:16 – 78:20.

7
Case No.: 12-2047 PSG
ORDER

to the EEO contact, Rollins stated that the Equal Employment Opportunity Commission ("EEOC") found in his favor.[46]

Before agreeing to the ADA, on August 5, 2010, Rollins initiated EEO contact again, this time alleging discrimination based on his February 2010 reassignment, his AWOL charge, and the proposed suspension arising out of the July 15 and 16, 2010 absences.[47] Rollins claimed that he was discriminated against because other non-African-American officers, such as Salvador Araujo and Robert Kremer, failed to report to work numerous times and yet were not disciplined despite misusing sick leave.[48]

On November 12, 2010, Rollins filed a formal EEO complaint alleging discrimination on the basis of race, disability and retaliation for protected EEO activity under Title VII.[49] Rollins based his claims on: (1) the February 14, 2010 reassignment from supervisor to police officer; (2) the AWOL charge based on the July 15 and 16, 2010 absences; (3) the July 22, 2010 Notice of Proposed Suspension arising from the July absences; and (4) the September 1, 2010 Decision on Proposed Suspension, which in fact reflects the .[50] On July 15, 2011, the Navy accepted claim (2) for investigation, and dismissed claims (1), (3) and (4) as untimely filed, as a proposed action, and for failure to state a claim, respectively.[51] After investigating claim (2), the defendant found that the Rollins was not charged with AWOL for his July 2010 absences and dismissed the claim.[52]

---

[46] *See id.* Ex. V at 7. Rollins represented in his deposition that because of an injury resulting from a car accident, he "didn't get a chance to respond to the EEOC that it was ruled out," and he "didn't respond in time." *See id.* Ex. AG at 48:7-12. Rollins was not specific however about the EEOC ruling to which he was referring.

[47] *See id.* Ex. B at 4; Ex. A ¶ 14

[48] *See id.* Ex. V at 12.

[49] *See id.* Ex. D at 1.

[50] *See id.* Ex. D at 1; Ex. A ¶¶ 17, 19; Ex. C at 1.

[51] *See id.* Ex. A ¶¶ 19, 22; Ex. D at 1-2.

8

Case No.: 12-2047 PSG
ORDER

On August 15, 2011, Rollins appealed the decision to the EEOC.[53] On January 24, 2012, the EEOC affirmed the Navy's dismissal of claim (1) and reversed and remanded the Navy's dismissal of claims (2) and (4).[54] The EEOC found that the Navy's dismissal of claim (2) was improper because, contrary to the Agency's conclusion that Rollins was not charged with AWOL, some evidence suggested that Rollins in fact was charged with AWOL.[55] The Commission found that claim (3) merged with claim (4) and that the dismissal of these claims was improper because the suspension was not rendered moot when it was held in abeyance.[56]

The EEOC gave Rollins leave to file a civil action within ninety days of its decision.[57] As a result, Rollins brought the following claims in this court: (1) a Title VII race discrimination claim; (2) a defamation claim; (3) an assault claim; (4) an intentional infliction of emotional distress claim; and (5) a Title VII retaliation claim.[58] On February 29, 2012, Rollins voluntarily retired from the Navy.[59] Rollins neither contacted an EEO counselor nor filed an administrative complaint alleging a hostile work environment or constructive termination before or after retiring.[60] Rollins' retirement forms stated that his reason for retirement was "to obtain retirement benefits" and did not mention a hostile work environment.[61]

---

[52] *See id.* Ex. D at 3.

[53] *See id.* Ex. A ¶¶ 23-24.

[54] *See id.* Ex. D at 4-5.

[55] *See id.*

[56] *See id.*

[57] *See id.* Ex. A ¶ 24; Ex. D at 6.

[58] *See id.* Ex. A.

[59] *See id.* Ex. AC.

[60] *See id.* Ex. AG at 59:10-21; Ex. V at 7. 8.

[61] *See id.* Ex. AB; Ex. AC.

Case No.: 12-2047 PSG
ORDER

## II. LEGAL STANDARDS

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62] The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[63] If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[64] A genuine issue for trial exists if there is sufficient evidence for a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, to return a verdict for the nonmoving party.[65] If the nonmoving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law."[66]

## III. DISCUSSION

### A. Claims at Issue

The court first must address exactly what claims remain in this case and are at issue in this summary judgment motion. In July 2012, the Secretary moved to dismiss Rollins' tort claims, retaliation claim, and claims of discrimination insofar as they were based on acts that were not timely pursued or for which he failed to exhaust his administrative remedies.[67] In response, Rollins

---

[62] Fed. R. Civ. P. 56(a).

[63] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[64] Fed. R. Civ. P. 56(e).

[65] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[66] *Celotex*, 477 U.S. at 323.

[67] *See* Docket No. 9.

10
Case No.: 12-2047 PSG
ORDER

filed a statement of nonopposition in which he stated that he "believe[d] that the only plausible theories of recovery . . . are for [r]ace [d]iscrimination and [r]etaliation."[68] At the hearing on the motion to dismiss, the Secretary agreed to submit a proposed order regarding the unopposed motion and a case management schedule.[69]

On August 23, 2012, the court issued an order in line with the proposal the Secretary offered and to which Rollins stipulated.[70] The order explicitly stated that the court was dismissing "with prejudice all claims against all defendants except [Rollins'] claim for discrimination under Title VII against [the Secretary] based on [Rollins] being charged with AWOL and receiving a [d]ecision on his [p]roposed [s]uspension."[71] Accordingly, the tort claims, the "defective claims" that were not timely or were not administratively exhausted, and the retaliation claims all were dismissed.[72]

In March 2013, Rollins sought leave to amend his complaint to add a claim under 42 U.S.C. § 1981,[73] a request he later withdrew.[74] In the request for leave, Rollins notably conceded that in the August 23 order the tort and retaliation claims were dismissed and "the scope of the Title VII discrimination [claim] severely limited."[75] Rollins also admitted that the statute of limitations and the administrative requirements under Title VII "precluded [him] from bringing a hostile work environment, constructive discharge [or] retaliation claims."[76]

---

[68] *See* Docket No. 13.

[69] *See* Docket No. 15.

[70] *See* Docket No. 17.

[71] *Id.*

[72] *See id.*

[73] *See* Docket No. 22.

[74] *See* Docket No. 30.

[75] Docket No. 22.

11
Case No.: 12-2047 PSG
ORDER

Rollins now asserts that constructive discharge and racially hostile work environment claims also arise out of the AWOL issue that is the subject of this case. He also argues that he is entitled to equitable tolling with regards to his retaliation claim arising out of his November 2009 suspension because he complained about the suspension but that complaint was not forwarded to the EEOC despite the Navy's policy to do so.

From the court's review of Rollins' complaint, it is not clear that claims of constructive discharge or a racially hostile work environment were ever part of this case. In the complaint, Rollins alleges that he was subjected to a "course of discrimination" by the Navy and then offers the February 2010 demotion, the July 2010 AWOL charge, and the proposed suspension from the AWOL incident, all of which he asserts were the result of race discrimination.[77] Those actions, including his vague allegations of "reprimands, threats and other intimidating conduct," however, do not suggest a "hostile work environment" as defined under Title VII.[78] The evidence before the court further undermines any claims Rollins may have to constructive discharge. Rollins admits he never approached an EEO Counselor to discuss that he was retiring because of either a hostile work environment or because of racial discrimination.[79]

Rollins filed a sur-reply – without leave from the court – in which he again tries to assert a hostile work environment claim, and argues that his unexhausted, untimely claims form the basis

---

[76] *Id.*

[77] *See* Docket No. 1 at ¶ 29.

[78] *See Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003) (noting that a prima facie hostile work environment claim requires a showing that a plaintiff (1) was "subjected to verbal or physical conduct because of her race"; (2) "the conduct was unwelcome"; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive work environment").

[79] *See* Docket No. AG at 59:10-21. Rollins' notice of retirement included a statement that he was retiring for the purpose of obtaining benefits, but he disputes that he told the human resources counselor who aided him with the forms that was his reason for retiring. *See id.* at 64:5 – 65:1. But he did not testify that he told her the reason was because of racial discrimination.

12
Case No.: 12-2047 PSG
ORDER

for the claim.[80] But all of the factual allegations – the proposed suspension, the demotion, work assignments – support disparate treatment claims, not a hostile work environment claim, which instead requires "discriminatory intimidation, ridicule, and insult."[81] Rollins provides no evidence or even allegations that he was subject to that form of racial harassment. Even if hostile work environment and constructive discharge were at some point a part of this case, however, Rollins stipulated to dismissal of all claims with prejudice except for the race discrimination claim arising out of the AWOL charge and the proposed suspension. At this point, that claim is the only viable cause of action.

The court also is unclear as to how exactly equitable tolling or equitable estoppel aids Rollins in his attempt to add back his retaliation claim. Equitable tolling applies when "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."[82] Equitable estoppel, a related doctrine, requires certain factors: "(1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied."[83] "Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant."[84]

Rollins asserts in his opposition that he is entitled to equitable tolling or estoppel because the letter he sent to the Navy's human resources department in December 2009 asserting workplace

---

[80] *See* Docket No. 42.

[81] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

[82] *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (overruled on other grounds).

[83] *Id.*

[84] *Id.*

13
Case No.: 12-2047 PSG
ORDER

discrimination was not forwarded to the EEOC. He asserts that as a result his complaint regarding the November 2009 events were not part of the EEOC's record when it considered his appeal of the initial dismissal of his claims by the Navy. He argues that because the Navy failed to forward the letter to the EEO specialist, he should be entitled to pursue a retaliation claim based on his theory that the February 2010 demotion was retaliation for his complaints in December 2009.

Rollins does not explain why the Navy's failure to forward to the EEOC his complaint regarding the November 2009 events affects in any way the timeliness of his claim that he was retaliated in February 2010. He failed to pursue that claim until August 2010 – well after the limitations period. Even if the letter's failure to reach the EEOC was tied to the merit of his retaliation claim, Rollins has provided no evidence that he believed a complaint to the human resources department was sufficient to satisfy the requirement that he file complaints with an EEO counselor.[85] The fact that he complained about racial discrimination to the human resources department of the Navy and that the Navy has a policy to forward those complaints to the EEO Counselor does not lead to the inference that Rollins knew about the policy or relied on it. And, even if Rollins had a subjective belief that his letter was an effective EEO complaint because he relied on the policy, he has not provided any evidence that the person to whom he sent the letter in fact served as an "agency official logically connected with the EEO process, even if that official is not an EEO Counselor," such that he satisfied the requirement that he approach an EEO counselor regarding his complaint.[86] In other words, Rollins provides no evidence other than the Navy's failure to send the letter to the EEOC to support his claim that equitable tolling or equitable estoppel applies here.

Regardless, even if equitable tolling or estoppel could aid Rollins, which they do not, he stipulated to dismissal with prejudice of the untimely claims. The only cause of action at issue in

---

[85] *See* 29 C.F.R. § 1614.105(a)(1).

[86] *See Kraus v. Presidio Trust Facilities Div.*, 572 F.3d 1039, 1044 (9th Cir. 2009).

14
Case No.: 12-2047 PSG
ORDER

this case is Rollins' claim that the consequences from the AWOL issue were the product of discrimination.

**B.     Discrimination Claim**

Further clarification of the claim at issue is warranted given the various changes to the disciplinary actions to which Rollins was subject. Rollins is not complaining about his actual punishment, the seven-day suspension held in abeyance pending completion of a one-year probationary period. He points only to the 14-day proposed suspension and the initial AWOL charge that may have been changed by the ADA. Rollins argues that those disciplinary actions – the proposed suspension and the AWOL charge – are the result of discriminatory motives by Bench, Pray, and Gardner.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race."[87] For a claim of racial discrimination, the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*.[88] "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination."[89] "If plaintiffs establish a prima facie case, 'the burden of production, but not persuasion, shifts to the employer to articulate some legitimate, non-discriminatory reason for the challenged action.'"[90] "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether defendant's proffered reasons for their termination are mere pretext for unlawful discrimination."[91]

---

[87] 42 U.S.C. § 2000e-2(a)(1).

[88] 411 U.S. 792 (1973).

[89] *See Hawn v. Exec. Jet Mgmt, Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

[90] *Id.*

[91] *Id.*

15
Case No.: 12-2047 PSG
ORDER

"To establish a prima facie case, plaintiffs 'must offer evidence giving rise to an inference of unlawful discrimination.'"[92] To do so, plaintiffs may rely on circumstantial evidence showing: (1) "that they are members of a protected class"; (2) "that they were qualified for their positions and performing their jobs satisfactorily"; (3) "that they experienced adverse employment actions"; and (4) "that similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."[93] Although similarly-situated persons outside of the protected class need not be identical to a plaintiff, they must "be similar in all material respects," which "will depend on context and the facts of the case."[94]

The Secretary argues that Rollins has not established a prima facie case because he has not identified a specific similarly-situated non-African-American who was treated more favorably. Rollins responds that two such individuals – Salvador Araujo ("Araujo") and Robert Kremer ("Kremer") – were similarly-situated because they, too, were federal police officers subject to the same standards and policies of conduct. According to Rollins, both Araujo and Kremer violated the leave policy and created "manpower issues" by improperly calling in sick and yet were not suspended as he was. Unlike Rollins, they were instead place on a leave and attendance requirement that merely obligated them to supply a doctor's note for sick leave requests in the future.[95] The Secretary replies that even if Araujo and Kremer were treated differently, they were not similarly situated principally because (1) Araujo did not intentionally disobey a direct order from a supervisor to return to work and lacked any prior

---

[92] *Id.* at 1156.

[93] *See id.*

[94] *See id.* at 1157.

[95] *See* Ex. 8. Rollins also highlights the fact that the only officers ever suspended for violating the leave policy since 2010 were Africans-Americans like himself. But in the absence of a broader claim of systemic discrimination, Rollins' obligation in making a prima facie case is to identify those similarly-situated individuals outside his protected class who received favorable treatment, not others inside his class whose treatment was comparable.

16
Case No.: 12-2047 PSG
ORDER

disciplinary record and (2) the misuse of sick leave is a different offense than failing to report, which rendered Rollins AWOL. Rollins also points to another African-American male employee, Desmond Williams ("Williams"), who was also suspended for violating the leave policy.

The Ninth Circuit has advised that consideration of an employer's arguments regarding whether an employee is similarly-situated is more appropriate in the third step of the *McDonnell Douglas* framework because those arguments really address whether an employer's decision was pretextual.[96] The difference between the first and third stages of the framework matters because the burden at the third stage is greater than at the first stage.[97] And so, at the prima facie stage, the court considers whether Rollins has shown a non-African-American with whom he has a "similar job[]" and who "display[s] similar conduct."[98] The Ninth Circuit has observed that even at the prima facie stage, "employees who have not engaged in problematic conduct of comparable seriousness . . . are not similarly situated."[99]

The court notes that there is no evidence before it that the two men Rollins points to were AWOL, as Rollins acknowledged was true in his case. The broad category of Araujo's and Kremer's misconduct may match Rollins' because they all failed to comply with the Navy's leave policy, but the actual violations are materially different. Araujo and Kremer claimed to be sick when they were not; Rollins did not even show up to his assigned shift. Araujo's and Kremer's absences were approved, but for reasons that were false. Misrepresenting the basis for a requested leave is not the same as failing to secure permission to report for duty in accordance with stated policy.

Even if the court were to consider the violations of the leave policy as not materially different, Rollins has not provided evidence that either Araujo or Kremer refused to return to work immediately

---

[96] *See Hawn*, 615 F.3d at 1158.

[97] *See id.*

[98] *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

[99] *Freeman v. Astrue*, 405 Fed. Appx. 148, 151 (9th Cir. 2010).

17
Case No.: 12-2047 PSG
ORDER

when discovered as Rollins did (which he most likely cannot given the differences in the violations). And he is not entitled to an inference in the absence of that evidence that Araujo and Kremer made the same refusal. In his written and oral submissions, Rollins ignores this additional basis for his suspension. Rollins' insubordination, rather than his violation of the leave policy, is the basis for distinguishing him from Araujo and Kremer.

Rollins focuses on the violation of the leave policy to draw comparisons between him and Araujo and Kremer. He contends that the underlying violation – taking leave without approval – was not so different in severity than Araujo's and Kremer's violations because, unlike Araujo and Kremer, Rollins told Pray about his desire to take leave and had a good faith belief that "it was just a matter of signing the paperwork." Rollins also contends he believed that his leave on July 15 and 16, 2010 was approved, even though he failed to secure the signature of his supervisor as required by the policy, given that Bench at some point after the fact approved the request.

Again, Rollins assumes the initial violation of the leave policy is the only factor at issue, rather than also considering his subsequent insubordination. But even if that were true, a well-intentioned violation of policy is still a violation, and the "approval" Rollins points to was nothing more than a clearing of the electronic request Rollins submitted after the absence at issue to ensure he was not paid for the missing days.[100] And Rollins ignores that he took actions afterward that Araujo and Kremer did not.

Rollins alternatively argues that he can establish a prima facie case under a "mixed motive" theory of liability. Rollins is correct that that under the Civil Rights Act of 1991, a claim for employment discrimination on the basis of race can proceed even if other factors motivated the adverse action. Rollins also is correct that direct evidence of a mixed motive is not necessary where circumstantial evidence of discrimination is presented.[101] But for all the reasons discussed above

---

[100] *See* Docket No. 41 Ex. 3 at 92:7-25; Ex. 7.

[101] *See Costa v. Desert Place, Inc.*, 123 S.Ct. 2148 (2003).

18

Case No.: 12-2047 PSG
ORDER

regarding a single motive, there is neither direct nor circumstantial evidence in the record that would allow a reasonable jury to find that Rollins' supervisors acted with a mixed motive.

The evidence of Williams and his suspension likewise fails to support a reasonable jury finding that Rollins' proposed suspension and initial AWOL charge were the result of discrimination. Rollins cannot offer Williams under the "similarly-situated employee" framework because Williams is also African-American. Rollins instead offers Williams' treatment as circumstantial evidence of racial discrimination because Williams is African-American and was subject to similar disciplinary actions. Williams claims that he was improperly determined to be AWOL as a result of racial animus and that his discipline – a fourteen-day suspension – was also the result of discrimination.[102] Assuming Williams' testimony is admissible,[103] absent a comparable non-African-American employee, no inference of racial discrimination results merely from the overlapping facts between the two men's situations. Neither Rollins nor Williams offer any other evidence regarding Pray, Bench, or Gardner that they were motivated by racial animus.

Even if Rollins had established a prima facie case, however, the Secretary has offered a legitimate, non-discriminatory reason for Rollins' termination, specifically his AWOL coupled with his subsequent insubordination and his prior disciplinary record. Because of that showing, the burden shifts back to Rollins to show a triable issue that the Secretary's reasons are pretextual. Rollins has not made that showing.

Rollins argues that because Araujo and Kremer received less harsh discipline for their leave policy violations, they must have benefited from preferential treatment on account of their race, and so the Secretary's reasons for his suspension are pretextual. But this presupposes that they are truly comparable. Before Rollins can assert that Araujo and Kremer received better assignments because of their race, he must establish that he was in the same or a similar position to preclude any other reason

---

[102] *See* Docket No. 41 Ex. 9.

[103] *See Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995) (holding that evidence of defendant's "sexual harassment of other female workers may be used . . . to prove motive or intent in discharging" plaintiff, assuming that the unfair prejudice does not outweigh the probative value).

19
Case No.: 12-2047 PSG
ORDER

for their treatment and thereby to allow an inference of pretext. It may be true that Araujo and Kremer received preferential treatment, but because their underlying conduct did not include the subsequent insubordination and discipline attributable to Rollins, any preferential treatment cannot be attributed to his race.

## IV.   CONCLUSION

The Secretary's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: July 8, 2013

PAUL S. GREWAL
United States Magistrate Judge

20

Case No.: 12-2047 PSG
ORDER